UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80840-CIV-DIMITROULEAS/D'ANGELO

ADONIS BATISTA,

    Plaintiff,

vs.

PALM BEACH COUNTY
SHERIFFS OFFICE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants Agent Steven Septien, Agent Eddie Warren, and Sergent David Vitola's Motion for Summary Judgment filed on June 10, 2025 (DE 89).[1] Plaintiff Adonis Batista, proceeding *pro se*, filed his response in opposition on December 30, 2025 (DE 106), and Defendants replied on January 6, 2026 (DE 107). Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Defendants' Motion for Summary Judgment be **GRANTED**.

    I.    **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**[2]

On September 27, 2022, Defendants Agent Steven Septien, Agent Eddie Warren, and Sergent David Vitola (collectively, "Defendants") and members of the Palm Beach County

---

[1] On August 4, 2025, this case was referred to the undersigned Magistrate Judge for all non-dispositive matters and for a Report and Recommendation on any dispositive matter (DE 95).

[2] The factual background is taken from Defendants' Statement of Undisputed Facts filed on June 10, 2025 (DE 88). Plaintiff did not file an opposing statement of material facts as required by Local Rule 56.1(a)(2). Accordingly, this Court views the facts in Defendants' Statement of

Sheriff's Office ("PBSO") executed a federal arrest warrant issued for Plaintiff out of Oklahoma (DE 88 ¶ 1). As part of the assignment to execute the arrest warrant, the Drug Enforcement Agency ("DEA") provided Defendants' unit with intelligence, including Plaintiff's criminal history and that he resided as his mother's apartment (*id.* ¶ 2). The DEA intelligence also contained Plaintiff's criminal history, which included a 2021 conviction for fleeing and attempting to elude law enforcement (*id.* ¶ 3). Based on this information, the unit decided to engage Plaintiff when he was inside his mother's apartment to avoid him fleeing (*id.*).

In the early morning of September 27, 2022, Defendants' unit conducted surveillance of Plaintiff's mother's apartment complex and recognized a vehicle belonging to Plaintiff pulling into the parking lot (*id.*) Plaintiff was observed exiting the vehicle (*id.*). Upon exiting the vehicle, Plaintiff recognized the police presence and understood law enforcement was there for him (*id.* ¶ 7). After Plaintiff went into the apartment, the PBSO unit, wearing protective vests that identified themselves as law enforcement, proceeded to the apartment to execute the arrest warrant (*id.* ¶¶ 8-9). Once they arrived at the apartment door, Defendants used a Long-Range Acoustics Device ("LRAD") system to announce themselves as PBSO and knocked on the door several times, ordering Plaintiff to the front door (*id.* ¶ 10).

Several minutes passed and additional announcements were made without a response from Plaintiff (*id.* ¶ 11). Equipped with a riot shield for protection, Defendant Warren went to the front door to verify if someone was inside the apartment (*id.*). Plaintiff went to the patio of the apartment and opened the shutters covering the screen, which had to be done if someone wanted to open the patio door and leave from the back of the apartment (*id.* ¶ 12). Before the agents at the front of

---

Undisputed Facts as undisputed, except where otherwise noted. *See* Fed. R. Civ. P. 56(e)(2) (explaining that when a party fails to properly address another party's assertion of fact, a court may consider that fact as undisputed).

the house announced themselves, two agents were positioned at the back of the apartment to prevent any attempts by Plaintiff to flee (*id.* ¶14). The agents at the back of the apartment radioed to Defendants at the front of the apartment that Plaintiff was trying to flee and ordered Plaintiff to return to the front of the apartment and comply with the officers' commands (*id.* ¶ 15). Plaintiff went inside the apartment, and Plaintiff's mother answered the door (*id.* ¶ 16). Plaintiff's mother told him that the officers were looking for him, and he responded, "[O]h my god" (*id.* ¶¶ 17-18).

As the front door opened, Defendants observed Plaintiff inside the apartment, pacing back and forth (*id.* ¶¶ 19-20). Based on their knowledge and experience as law enforcement officers, Defendants perceived Plaintiff to appear nervous or in a fight or flight mode (*id.* ¶ 20). In response to Defendants' commands, Plaintiff did not immediately comply but instead, stated that he needed to get a shirt (*id.* ¶ 21). Seeing this at the threshold of the front door, Defendants Warren and Septien directly ordered Plaintiff to get on the floor; however, Plaintiff continued pacing and muttered to himself (*id.* ¶ 22). After Plaintiff disregarded additional orders, Defendant Vitola gave Defendant Warren the order to deploy the non-lethal 40mm projectile he was carrying (*id.* ¶ 23). Plaintiff was struck once in the lower back, causing him to stop pacing (*id.* ¶¶ 23, 26). Plaintiff testified that he was struck with the non-lethal projectile when he turned his head and asked to see the warrant (*id.* ¶ 25).[3] Plaintiff then proceeded to comply with the commands and got on the floor, which allowed Defendants to enter the apartment and handcuff Plaintiff (*id.* ¶ 26).

While being escorted out of the apartment, Plaintiff did not appear to be seriously injured, and as a precaution, was transported to Wellington Regional Medical Center (*id.* ¶¶ 27-28). At the medical center, Plaintiff was examined, and it was determined he suffered a lumbar contusion (*id.*

---

[3] Plaintiff stated that the night before Defendants executed the warrant, he smoked marijuana and did not remember what he was doing between 10:00 pm and 3:00 am on the morning of September 27, 2022 (*id.* ¶ 5).

3

¶ 28). Plaintiff never received any confirmation from a doctor that his injury was anything more than a contusion or swelling (*id.* ¶ 29). In the following weeks, medical records from the jail demonstrate Plaintiff was treated for minor back pain (*id.* ¶ 30). As of October 11, 2022, before Plaintiff was transported to Oklahoma, he only complained about pre-exisitng injuries, namely issues with his left toe, which were unrelated to the September 27, 2022 arrest (*id.*). Subsequently, Plaintiff was charged with resisting arrest without violence by the State Attorney's Office based on his conduct on September 27, 2022 (*id.* ¶ 38). Upon his conviction of federal drug charges in Oklahoma, the State Attorney's Office dropped the charge for resisting arrest without violence as part of a deferred prosecution agreement (*id.* ¶ 39).[4]

On September 10, 2024, Plaintiff filed his Second Amended Complaint where he asserted a claim under Title 42, United States Code, Section 1983 for Defendants' unlawful and excessive use of force (DE 44 ¶¶ 11-16). On November 20, 2024, the Court screened the Second Amended Complaint and denied Defendants' Motion to Dismiss (DE 60). The Court noted that the Second Amended Complaint stated an excessive force claim and "survives screening against the arresting officers" (*id.* at 2). The Court further recognized that Plaintiff "lump[s] the actions of all of the Defendants together, and it is unclear . . . which officer (or officers) shot the Plaintiff [and] . . . which officers are alleged to have merely encouraged the shooting, or to have failed protect the Plaintiff from the shooting . . . ." (*id.* at 3).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4] In the statement of undisputed facts, Defendants provide a detailed background of Plaintiff's failure to comply with discovery obligations and the Court's Orders requiring Plaintiff to provide discovery responses and initial disclosures, which Plaintiff has not done (DE 88 ¶¶ 31-36, 42-44).

4

Civ. P. 56(a). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]ll inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. . . . A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996) (citations omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted).

### III.   DISCUSSION

Defendants advance two primary arguments as to why summary judgment is appropriate. First, Defendants contend that their use of a non-lethal projectile while they were executing an arrest warrant did not constitute excessive force under the circumstances (DE 89 at 8-11). According to Defendants, despite repeated commands for Plaintiff to surrender himself at the front door, Plaintiff opened the shutters covering the back patio, which was reasonably perceived as an attempt to escape (*id.* at 8-9). Defendants maintain that even after Plaintiff's mother opened the front door, Defendants ordered Plaintiff to exit the apartment through the front door (*id.*). Instead of complying, Plaintiff appeared as if he was panicking and becoming increasingly nervous (*id.*). Defendants suggest that under the totality of the circumstances, they made the split-second decision to use the non-lethal 40mm projectile to prevent further escalation (*id.*). In Defendants'

5

view, "[a] reasonable officer presented with the same circumstances could reasonably believe Plaintiff was attempting to escape and was resisting" (*id.* at 10).  Additionally, Defendants argue that Plaintiff's lack of any serious injury from this incident shows that Defendants' actions were reasonable (*id.* at 11).  Next, Defendants maintain they are entitled to qualified immunity, because no reasonable officer in the same situation would conclude Defendants' use of non-lethal force violated Plaintiff's constitutional rights (*id.* at 11-12).

In opposition to the Motion, Plaintiff argues that Defendants' force was excessive as "the defendant [warren], shot [P]laintiff in the [b]ack with a 40mm projectile at close range" (DE 106 at 4).  Plaintiff contends that he was shot "while he had his hands in the air and was not posing any imminent threat to the safety of the defendant[s]" (*id.* at 4-5).  Plaintiff also argues Defendants' force was excessive as "there's no direct evidence in the objective record evidence, [b]efore this Court, that the defendant 'warren' had reason to believe that plaintiff would attempt to escape or flee" (*id.* at 5).  In Plaintiff's view, his actions and conduct do not lawfully justify Defendants shooting him in the back, and as a result, Defendants "use of deadly force" was objectively unreasonable and violated Plaintiff's Fourth Amendment rights (*id.* at 5-6).  Regarding qualified immunity, Plaintiff argues that Defendants' conduct constituted a violation of a clearly established constitutional right, because Defendant Warren knew or should have known what he was doing was wrong (*id.* at 6).

### A. Legal Standards for Qualified Immunity and Excessive Use of Force

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "To even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a 'discretionary

function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004) (citation omitted). "Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

"[W]e are obliged to grant qualified immunity unless the plaintiff can demonstrate: first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers, and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).[5] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). "The essential question here is whether the officer had 'fair warning' that his actions were unconstitutional. This analysis is primarily conducted by looking at the binding case law of the Supreme Court and this circuit." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (citations omitted).

Courts review "the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the reasonableness of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citations omitted and emphasis original). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at

---

[5] District courts are permitted to exercise discretion in deciding which prong of this inquiry to address first. *McCullough*, 559 F.3d at 1205.

7

397 (citation omitted). "In this respect, '[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (citation omitted).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough*, 559 F.3d at 1206. "The Supreme Court has analyzed a non-exhaustive list of factors, such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (quoting *Graham*, 490 U.S. at 396). "Other considerations include 'the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted.'" *Hall v. McGhee*, 762 F. App'x 837, 841 (11th Cir. 2019) (quoting *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, it is undisputed that Defendants were acting within their discretionary authority when they allegedly used excessive force in effectuating the arrest of Plaintiff. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("In this case, there can be no doubt that Ferraro was acting in his discretionary capacity when he arrested Lee."); *Brown*, 608 F.3d at 741 (noting that the plaintiffs conceded there was no dispute that the defendants were acting within their discretionary function as law enforcement officers by making an arrest). The Court therefore turns to whether

8

Plaintiff has sufficiently established that Defendants violated his constitutional rights and whether such violation was clearly established at the time of Plaintiff's arrest.

### B. Plaintiff's Excessive Force Claim

Plaintiff argues that Defendants' use of a single non-lethal 40mm projectile, which struck Plaintiff in the back, was excessive force in violation of his constitutional rights. The undisputed facts show that Defendants knew before they approached the apartment that Plaintiff had a criminal conviction for fleeing and attempting to elude law enforcement (DE 88 ¶ 3). When law enforcement arrived, Plaintiff "recognized that police were present at his mother's apartment complex[ and] understood that they were there for him . . . ." (*id.* ¶ 7). Nevertheless, Plaintiff refused to comply with Defendants' commands and instead, moved to the back of the apartment where he opened the shutters covering the screen, which one must do to exit the back patio door (*id.* ¶¶ 10-12). Other agents in the rear of the apartment informed Defendants about Plaintiff's activity, and when Plaintiff's mother opened the apartment's front door, Defendants could see Plaintiff from the doorway (*id.* ¶¶ 14-15, 18-19). Instead of complying with Defendants' commands to exit the front of the apartment, Plaintiff began to pace back and forth, and Defendants thought he was in fight or flight mode (*id.* ¶ 20-22). Defendants did not know if there were weapons in the apartment that Plaintiff could access (*id.* ¶ 22). After giving several orders with which Plaintiff did not comply, Agent Warren deployed a single non-lethal projectile, striking Plaintiff in the back, which allowed Defendants to place Plaintiff in handcuffs (*id.* ¶¶ 23, 25-26).

These facts, which Plaintiff has not rebutted, demonstrate that on September 27, 2022, Defendants were confronted with Plaintiff, who tried to evade arrest, or at a minimum disregarded multiple commands by Defendants throughout the encounter. Although he did not submit a statement of material facts under Local Rule 56.1, Plaintiff claims that he disputes "whether there was an exit in which Plaintiff could have escaped or attempted to flee" (DE 106 at 7). Plaintiff

9

further contends that Agent Warren "shot Plaintiff in the back with a 40mm projectile at close range (approximately within 5 feet) in the back . . . while he had his hands in the air and was not posing any imminent threat to safety of [Defendants] . . . and Plaintiff was not actively resisting arrest – attempting to escape or flee . . ." (*id.* at 4-5). Defendants argue that due to Plaintiff's lack of compliance with the Rules, the Court should deem all Defendants' facts as admitted and disregard Plaintiff's factual assertions in his opposition (DE 107 at 2-5).[6] *See Katchmore Luhrs, LLC v. Allianz Glob. Corp. & Specialty*, No. 15-CIV-23420, 2017 WL 201840, at *2 (S.D. Fla. Jan. 18, 2017) (explaining that under Local Rule 56.1, the Court has authority to deem facts as admitted when the plaintiff does not submit a competing statement of material facts). Even if Plaintiff had raised these additional facts properly in a statement of material facts, it would not alter the Court's conclusion, as demonstrated below.

Turning to the *Graham* factors that courts implore to assess whether the use of force was reasonable, the first factor looks to the severity of the crime at issue. This factor weighs in Defendants' favor. The September 27, 2022 arrest was predicated on a federal warrant out of Oklahoma related to a federal drug offense, of which Plaintiff was subsequently convicted (DE 88 ¶¶ 1, 39). Additionally, based on Plaintiff's conduct on September 27, 2022, he was charged with the separate offense of resisting arrest without violence by the State Attorney's Office (*id.* ¶ 38). Put differently, by the time force was used, Plaintiff could have been arrested for two crimes. *See Charles*, 18 F.4th at 701 ("Two crimes were at issue by the time the taser was deployed: Charles

---

[6] Defendants also point out that the Court previously warned Plaintiff about the requirements of Local Rule 56.1 in its Order Setting Pretrial Deadlines, Order on Requirements, and Order of Reference to Mediation. "Local Rule 56.1 requires a motion for summary judgment (and opposition thereto) to be accompanied by a statement of material facts. The Rule also imposes very specific and very detailed requirements on a statement of material facts. Because the Court will strictly enforce the requirements of the Rule, the parties should carefully study the Rule to ensure their filings are in full compliance" (DE 28 at 11-12).

10

had an outstanding warrant for his arrest, and he had already begun his active and loud obstruction of the arrest. As established by his obstruction conviction, Charles was 'offering or doing violence' to one of the officers.")

The second factor, whether the suspect poses an immediate threat to the safety of the officers or others, also supports the use of force. Defendants observed that Plaintiff appeared nervous and was pacing and muttering to himself, while claiming he needed to get a shirt (DE 88 ¶¶ 20-21). Defendants were not inside the apartment and reasonably believed that Plaintiff might be able to access a weapon or something that could harm them if Plaintiff retreated into areas of the apartment that they could not see, given the circumstances (*id.* ¶ 22).

Lastly, pursuant to the third factor, even viewing the facts in the light most favorable to Plaintiff, he was not compliant with Defendants' orders on multiple occasions. As the scene unfolded, Defendants repeatedly issued command after command, giving Plaintiff every opportunity to surrender, but Plaintiff did not (*id.* ¶¶ 10-12, 15, 21-23). Defendants also knew before attempting the arrest that Plaintiff had a history of fleeing from law enforcement (*id.* ¶ 3). When Plaintiff opened the shutters at the back of the apartment, unit members told Defendants that Plaintiff may be attempting to flee (*id.* ¶¶ 12, 15). After Plaintiff's mother opened the door, Defendants ordered Plaintiff on multiple occasions to exit the front of the apartment, which he did not do (*id.* ¶¶ 21-23). These facts demonstrate that Plaintiff was actively evading arrest and refused to listen to law enforcement commands at the time force was used. *See Shadmani v. Barnes*, No. 22-CIV-1008, 2024 WL 4476157, at *8 (M.D. Fla. Oct. 11, 2024) (finding that the third *Graham* factor weighed in the officer's favor when the plaintiff resisted arrest, failed to submit to handcuffing, began to run away, and refused to place his hands behind his back when he was on the ground).

11

Further, Plaintiff's injury was relatively minor, as he suffered a contusion on his back, and there is no evidence that he required further medical intervention besides treatment for the pain (*id.* ¶ 30). Even though the lack of a severe injury does not foreclose a finding of excessive force, the extent of the injury inflicted can inform the relationship between the need for force and the amount used in response. *See Hall*, 762 F. App'x at 844 (cautioning district courts not to weigh the extent of the injury too heavily). More importantly, the timing of the force in this case – that is, before Plaintiff got on the floor, before Defendants entered the apartment, and before Plaintiff was placed in handcuffs – further reinforces its application. *See Sullenberger v. City of Coral Gables*, No. 22-CIV-21830, 2025 WL 101703, at *19 (S.D. Fla. Jan. 15, 2025) ("In deciding whether the Officers deployed excessive force against [the arrestee], we'll have to separate the force they used *before* he was [subdued] from the force they employed *after* he was subdued . . . The latitude a police officer enjoys in using force to effectuate a lawful arrest turns largely on this question of timing." (citations omitted)); *see also Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."). There is no dispute, even in Plaintiff's version of events, that Defendants struck him with the non-lethal projectile before he was under control, in handcuffs, or subdued on the ground. To the contrary, "[o]nce struck, [Plaintiff] ceased pacing back and forth, and after a few seconds got on the floor and complied with [Defendants'] command . . ." (DE 88 ¶ 26).

As a result, it was objectively reasonable for Defendants to subdue Plaintiff with a non-lethal 40mm projectile that left Plaintiff's lower back bruised, considering the situation and the information Defendants had available at the time. A review of excessive force cases in this Circuit

does not dictate a different result. *See e.g.*, *Crenshaw*, 556 F.3d at, 1292 (finding no excessive force when the plaintiff received thirty-one dog bites after he fled from police after committing two armed robberies); *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1281 (11th Cir. 2023) (finding that the officer's single use of a taser on the plaintiff was objectively reasonable as the plaintiff repeatedly ignored instructions from the officer and paramedics); *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) ("We have previously held that in a 'difficult, tense and uncertain situation' the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force." (citation omitted)). Therefore, Defendants used reasonable force based on the *Graham* factors and the totality of the circumstances with which they were faced.

### C. Defendants Are Entitled to Qualified Immunity

"Qualified immunity applies unless the application of the reasonable officer standard would 'inevitably lead every reasonable officer to conclude the force was unlawful.'" *Hall*, 762 F. App'x at 843 (citation omitted). "[T]he use of force is an expected, necessary part of a law enforcement officer's task of subduing and securing individuals suspected of committing crimes." *Lee*, 284 F.3d at 1200. By repeatedly commanding Plaintiff to go to the front door to be arrested, Defendants attempted multiple times to secure Plaintiff's arrest without incident. Plaintiff's repeated refusal to follow Defendants' instructions, along with the other attendant circumstances, caused Defendants to deploy a single, non-lethal projectile, which stuck Plaintiff in the back. No further projectiles were used, and there are no allegations that Plaintiff was the subject of any additional force. Even when viewing the facts in the light most favorable to Plaintiff, accepting his alleged facts, and drawing all reasonable inferences in his favor, the circumstances would cause any reasonable officer to conclude that the force used, specifically a single, non-lethal projectile to the back, was reasonable and lawful.

Because Defendants were acting within their discretionary authority, the burden shifted to Plaintiff to show Defendants violated a constitutional right that was clearly established, but Plaintiff has not met that burden. Plaintiff argues in a conclusory fashion that "[h]ere the defendant 'warren['s]' conduct, was nothing more than a deliberate intentional act to do wrong, when the defendant "warren" knew or should have known what he was about to do was wrong" (DE 106 at 6). Yet, claiming there is a dispute of fact does not actually create one to preclude summary judgment. *See Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-CIV-22539, 2014 WL 7272974, at *7 (S.D. Fla. Dec. 18, 2014) ("Latele cannot avoid summary judgment by simply saying the facts are in dispute . . . ."); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) ("Speculation does not create a *genuine* issue of fact." (citation omitted and emphasis original). The circumstances surrounding Plaintiff's arrest would not lead a reasonable officer in the same position to conclude that using a non-lethal projectile to effectuate the arrest was excessive and unlawful. *See Floyd v. Corder*, 426 F. App'x 790, 792 (11th Cir. 2011) (explaining that even if using a taser three times during an arrest was excessive force, the officer would still be entitled to qualified immunity) (per curiam).

Plaintiff's reliance on *Mobley v. Palm Beach County Sheriff's Department* is unavailing. 783 F.3d 1347 (11th Cir. 2015). In *Mobley*, the plaintiff dragged a police officer with his car, struck him with the car, and then led police on a vehicle chase that ended with the plaintiff wading into the middle of a pond. *Id.* at 1350-51. After the plaintiff waded out of the pond towards police, the arresting officers "grabbed him by the hair and shoved him to the ground, pinning him there and ordering him to surrender his hands to be cuffed. While [the plaintiff] was on the ground, the officers struck and kicked him, including in the face." *Id.* at 1351. The plaintiff was left with a broken nose, cuts and bruises, broken front teeth, and was later diagnosed with post-traumatic

14

stress disorder and began suffering seizures. *Id.* The Eleventh Circuit found that the arresting officers were entitled to qualified immunity, because their force was reasonable, as they knew the plaintiff struck a police officer with his truck, led law enforcement on a high-speed chase, and waded into the middle of a pond to evade arrest. *Id.* at 1355-56. The amount of force used in this case is noticeably less than *Mobley*, which the Eleventh Circuit upheld, given the escalating circumstances there. Rather, like *Mobley*, Plaintiff "has not pointed to any circumstances before he quit resisting and was handcuffed that show the force applied against him was objectively unreasonable." *Id.* at 1356. In sum, Plaintiff has not satisfied his burden, and Defendants are entitled to summary judgment based on qualified immunity.

Considering that Defendant Warren did not use excessive force in striking Plaintiff with the non-lethal projectile in the back, "[s]ummary judgment is also appropriate for the remaining officers . . . because a police officer has no duty to intervene in another officer's use of force when that use of force is not excessive." *Id.* at 1357. Additionally, Plaintiff did not plead any claim for supervisory liability against Defendant Vitola. Even if Plaintiff had, summary judgment would still be appropriate in Defendants' favor, as no excessive force was used. *See Ewing v. Taylor*, No. 23-CIV-1304, 2025 WL 2626738, at *7 (N.D. Ga. Sept. 10, 2025) ("[W]here there is no underlying constitutional violation, there can be no supervisory liability.").[7]

## IV.    CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment (DE 89) be **GRANTED** and that final judgment be entered in favor of

---

[7] Defendants also argue that their Motion for Summary Judgment should be granted, because "despite being ordered by the Court in December 2024 [to produce initial disclosures], Plaintiff never provided his initial disclosures," and as a sanction, Plaintiff's claims should be dismissed (DE 89 at 13-14). Since it is respectfully recommended that the Court grant Defendants' Motion for Summary Judgment for the reasons stated herein, the undersigned does not reach this argument.

Defendants Agent Steven Septien, Agent Eddie Warren, and Sergent David Vitola based on their qualified immunity for Plaintiff's excessive force claim.

V. **OBJECTIONS**

The Parties will have fourteen (14) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain error, if necessary, in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 4th day of February, 2026.

_____
ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:   *Pro se* Plaintiff Adonis Batista
      All Counsel of Record